UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| SHAMUS HOLDINGS, LLC, ) | Case No. 07-14572-JNF |
| ) | |
| Debtor. ) | |

### APPLICATION OF SHAMUS HOLDINGS, LLC, FOR AUTHORITY TO RETAIN MCCARTER & ENGLISH, LLP AS COUNSEL *NUNC PRO TUNC* TO JULY 25, 2007

Shamus Holdings, LLC, as debtor and debtor-in-possession herein (the "Debtor"), hereby requests that this Honorable Court enter an order, pursuant to section 327 of the United States Bankruptcy Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Massachusetts Local Bankruptcy Rule ("MLBR") 2014-1, authorizing the Debtor to retain Charles A. Dale, III and the law firm McCarter & English, LLP ("M&E") as its counsel in this case, *nunc pro tunc* to July 25, 2007. In further support of the Motion, the Debtor respectfully represents as follows:

### Background

1.    On July 25, 2007 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Massachusetts (Eastern Division).

2.    The Debtor has continued in possession of its property and has continued to operate and manage its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

- 1 -

ME1 6605937v.1

3. No request has been made for the appointment of a trustee or examiner, and no official committee has yet been appointed in this case.

4. The Debtor owns a commercial condominium known as and located at Unit C-1, the Foundry Condominium, 314-330 West Second Street, South Boston, Massachusetts (the "Property"). The Debtor's bankruptcy proceeding was precipitated by a foreclosure sale scheduled by a disputed secured creditor, LBM Financial LLC ("LBM"). The mortgage that allegedly encumbers the Debtor's property secures a guaranty of a loan allegedly made to 655 Corp. (also a Chapter 11 debtor before this Court). The guaranty in question was allegedly issued by Foundry Realty LLC, an entity owned and controlled by the same individual, Bernard Laverty. The Debtor purchased the Property following a foreclosure sale of the Property in July 2005. The Debtor believes that LBM does not hold a valid secured claim against the Property.

## Relief Requested

5. By this Application, the Debtor seeks to employ and retain M&E as its bankruptcy counsel in connection with the commencement and prosecution of this chapter 11 case.

6. The Debtor has selected M&E as its attorneys because of the Firm's extensive experience and knowledge in the field of debtors' and creditors' rights and business reorganizations under the Bankruptcy Code. In preparing for its representation of the Debtor in this case, M&E has become familiar with the Debtor's business and affairs and many of the potential legal issues which may arise in the context of this chapter 11 case.

7. Subject to Court approval in accordance with sections 330(a) and 331 of the Bankruptcy Code, compensation will be payable to M&E on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred and regularly charged by M&E.

ME1 6605937v.1

Subject to Court approval, M&E will bill for legal services in accordance with its ordinary and customary rates in effect on the date services are rendered. M&E's current standard hourly rates range from $330 to $500 for partners, $195 to $300 for associates, and $100 to $170 for paraprofessionals. M&E's hourly rates are subject to periodic adjustments to reflect economic and other conditions.

8. The hourly rates set forth above are M&E's standard hourly rates for work of this nature. These rates are set at a level designated to fairly compensate M&E for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses.

9. It is also M&E's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, telephone toll and other charges, mail and express mail charges, special or hand delivery charges, document retrieval, photocopying charges, travel expenses, computerized research and transcription costs. M&E will charge the Debtor for these expenses in a manner and at rates consistent with charges made generally to M&E's other clients. M&E believes that it is appropriate to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all clients.

10. The professional services that M&E will render to the Debtor include, but shall not be limited to, the following:

    a.    providing legal advice with respect to the Debtor's powers and duties as a debtor-in-possession in the continued operation of its business and management of its property;

    b.    preparing and filing all necessary motions, notices, and other pleadings necessary to sell some or substantially all of the Debtor's assets;

    c.    assist the Debtor in reviewing and maintaining its executory contracts and unexpired leases, and negotiating with parties thereto;

ME1 6605937v.1

    d.    preparing and pursuing approval of a disclosure statement and confirmation of a plan of reorganization;

    e.    preparing on behalf of the Debtor all necessary applications, motions, answers, orders, reports and other legal papers;

    f.    appearing in Court on behalf of the Debtor and protecting the interests of the Debtor before the Court; and

    g.    performing all other legal services for the Debtor which may be necessary and proper in these proceedings.

11. To the best of the Debtor's knowledge, and except as represented in the attached affidavit of Charles A. Dale, III, Esquire (the "Dale Affidavit"), M&E has not represented the Debtor's creditors, equity interest holders, or any other parties-in-interest, or their respective attorneys, in any matter relating to the Debtor or its estate.

12. To the best of the Debtor's knowledge, M&E does not hold or represent any interest adverse to the Debtor's estate, M&E is a "disinterested person" as that phrase is defined in section 101(14) of the Bankruptcy Code, and M&E's employment is necessary and in the best interests of the Debtor and its estate.

13. In July, 2007, the Debtor paid M&E a $3,000 retainer for services to be rendered in contemplation of these proceedings. The source of the funds for the retainer was income of the Debtor's ordinary business operations. The unapplied portion of the retainer (as of the Petition Date) will, subject to Court approval of an appropriate fee application, be applied to allowed postpetition fees and expenses. In addition, the Debtor's principal, Steven A. Ross, personally guaranteed the Debtor's obligations to pay the Court approved fees and expenses of McCarter & English, LLP. A copy of the engagement letter between the Debtor and McCarter & English is attached hereto.

ME1 6605937v.1

## **No Prior Request**

14.  No previous motion for the relief sought herein has been made by the Debtor to this or any other court.

WHEREFORE, the Debtor respectfully requests entry of an order, substantially in the form attached hereto: (i) authorizing the Debtor to employ and retain M&E as its bankruptcy counsel; and (ii) granting such other and further relief as is just and necessary.

Respectfully Submitted,

SHAMUS HOLDINGS, LLC
Debtor and Debtor-in-Possession

By: _____
Steven A. Ross
Manager

August __, 2007



ATTORNEYS AT LAW

July 25, 2007

Shamus Holdings, LLC
c/o Steven A. Ross
Gilmartin, Magence & Ross, LLP
376 Boylston Street
Boston, MA 02116

Re:  Engagement Letter

Dear Steve:

We are pleased that you have asked the firm to represent Shamus Holdings, LLC. This letter and the enclosed Terms of Engagement will describe the basis on which our firm will provide legal services to Shamus Holdings, LLC.

We have been engaged to represent Shamus Holdings, LLC in connection with its Chapter 11 bankruptcy filing.

I will be the lawyer at the firm with the primary responsibility for this representation. As indicated in the Terms of Engagement, our fees are based upon our hourly rates. My current hourly rate is $450.

We require the payment of a retainer in the amount of $3,000. You will be notified of any change in the amount of retainer required. In addition, you have agreed to personally guarantee payment of all of McCarter & English's Court approved fees and expenses. Notwithstanding your personal guarantee, you acknowledge that McCarter & English represents Shamus Holdings, LLC and that that firm will act solely on behalf of Shamus Holdings and not on your behalf individually.

Please review the Terms of Engagement carefully. Let me know if you have any questions about it. If all the terms are satisfactory, please indicate Shamus Holdings, LLC's consent by signing the enclosed copy below and returning it to me with the retainer in the enclosed reply envelope.

Again, we are pleased to have the opportunity to serve you and look forward to working with you.

Sincerely yours,

Charles A. Dale

CAD:ho

Charles A. Dale
Partner
T. 617.449.6584
F. 617.326.3082
cdale@mccarter.com

McCarter & English, LLP
265 Franklin Street
Boston, MA 02110
T. 617.449.6500
F. 617.607.9200
www.mccarter.com

BALTIMORE

BOSTON

HARTFORD

NEW YORK

NEWARK

PHILADELPHIA

STAMFORD

WILMINGTON

ME1 6602547v.2

Shamus Holdings, LLC
July 25, 2007
Page 2

The provisions of this letter and the Terms of Engagement are agreed to:

Shamus Holdings, LLC

By: _____

Title: _____

Dated: _____

I, Steven A. Ross, hereby personally guarantee the due and punctual payment of all fees and expenses awarded to McCarter & English, LLP in connection with the bankruptcy proceedings for Shamus Holdings, LLC.

_____
Steven A. Ross, Individually

ME1 6602547v.2

## TERMS OF ENGAGEMENT

The information below describes the terms that apply to the legal services provided for you by McCarter & English, LLP. We encourage you to discuss any of these terms with us at any time. If modifications to the terms are needed, you must discuss that with us so that agreement on changes can be reached and reduced to writing. All references to "you" or "your" means the client or clients identified in our engagement letter. Individuals or entities that are related to or affiliated with you, such as partners, officers, directors, stockholders, parent companies, related companies, or family members, are not clients, unless we otherwise agree in writing.

**Scope of Work.** The scope of the work we will do for you is limited to the description stated in our engagement letter. Any changes or additions to the scope of our work must be agreed to and memorialized by letter or email. Unless that description states otherwise, our engagement does not include responsibility for (1) review of your insurance policies to determine the possibility of coverage for our fees and costs or for the claim asserted, (2) notification of your insurance carriers about the matter, (3) advice to you about your disclosure obligations concerning the matter under the federal securities laws or any other applicable law, or (4) advice to you about tax issues that relate to the matter. If we agree to represent you in additional matters, we will do so in writing by letter or email, and the terms of our engagement will remain the same for these additional matters unless changed by agreement in writing.

**Staffing.** One lawyer will have the primary responsibility for our relationship. We assign additional lawyers and other personnel when needed based upon the type of work and the appropriate experience level required.

### Financial Arrangements

**(1) Fees and expenses.** Our fees are based upon the hourly rates of our lawyers and other personnel in effect when the services are performed. These rates change periodically based upon economic factors and the experience level and expertise of our personnel. Expenses include items such as filing fees, travel costs, overnight or other special mail services, messenger services, photocopies, long distance telephone, outgoing faxes, research service charges (e.g. LEXIS), secretarial and other staff overtime charges (when required to meet the needs of the matter), and other special services such as document imaging. Certain of these charges are adjusted to include administrative and overhead expenses incurred by the firm to provide the billed service. Some large disbursements may be forwarded to you for direct payment. Some charges may not be in the system at the time of monthly billing and will appear on a later bill.

**(2) Retainers.** The provisions relating to any retainer required is set forth in the engagement letter.

**(3) Billing and Payment.** We generally forward our statements monthly. The statements will include a brief description of each item of work performed, the date performed, the time required to do the work and the expenses incurred. Please let us know if you need additional information on the bills and we will try to accommodate your request. Payment is due promptly upon receipt of our statement. We reserve the right to terminate our representation of clients who do not pay promptly. We do not and cannot guarantee the outcome of any matter, and payment of our fees and disbursements is not conditioned on any particular outcome. You agree that if we bring an action to collect amounts due us that we will be entitled to recover the costs and fees incurred by us. You consent to venue and jurisdiction where we have an office with attorneys who

ME1 6602547v.2

worked on your behalf. If we are required to testify, produce documents, or respond to other requests in connection with proceedings commenced by third parties that relate to our representation of you, you will pay us our reasonable fees and costs incurred.

**Conflicts of Interest.** Recognizing and addressing conflicts of interest is a continuing issue for attorneys and clients. We have implemented procedures to identify conflicts at the outset of each engagement. It is possible that during our representation of you, some of our present or future clients will have disputes or transactions with you. We are accepting this engagement with your understanding and express consent that our relationship with you will not preclude us from continuing or accepting an engagement from a new or existing client, even if the interests of such clients are directly adverse. However, we will not accept an engagement that is directly adverse to you if either: (1) it would be substantially related to the subject matter of our representation of you, or (2) we have obtained from you proprietary or other confidential information of a nonpublic nature that, if known to our other client, could be used in any such other matter by such client to your material disadvantage. You should understand that having similar agreements with other clients helps preserve our ability to continue to represent you.

**Emails.** We encourage the use of email as an efficient means of communication. However, emails can be delayed or blocked (for example, by anti-spam software). You must not assume that an email message sent to us was actually opened and read by us unless you receive a non-automated reply message indicating that we have read your message.

**Conclusion of Representation.** Our representation of you will terminate when we send you our final statement for services rendered in this matter. We may also terminate our representation for any reason consistent with ethical rules, including conflicts of interest or your failure to pay our fees and expenses. Following termination, any nonpublic information you have supplied to us which is retained by us will be kept confidential in accordance with applicable rules of professional conduct. Once our representation is concluded, we will not be obligated to take any steps such as keeping track of deadlines, filing papers, pursuing appeals, or monitoring or advising you about changes in the law or circumstances that might bear upon the concluded matter. At your request, your papers and property will be returned to you promptly upon receipt of payment for outstanding fees and costs. Our own files pertaining to the matter will be retained by the firm. These firm files include, for example, firm administrative records, time and expense reports, personnel and staffing materials, credit and accounting records, and internal lawyers' work product such as drafts, notes, internal memoranda, and legal and factual research, including investigative reports, prepared by or for the internal use of lawyers. All such documents retained by the firm will be transferred to the person responsible for administering our records retention program. For various reasons, including the minimization of unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any documents or other materials retained by us within a reasonable time after the termination of the engagement.

2

ME1 6602547v.2

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| SHAMUS HOLDINGS, LLC, ) | Case No. 07-14572 |
| ) | |
| Debtor. ) | |

### ORDER AUTHORIZING SHAMUS HOLDINGS, LLC TO RETAIN MCCARTER & ENGLISH, LLP AS COUNSEL *NUNC PRO TUNC* TO JULY 25, 2007

Upon the application (the "Application") of Shamus Holdings, LLC., as debtor and debtor-in-possession (the "Debtor"), seeking the entry of an order pursuant to section 327 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Massachusetts Local Bankruptcy Rule ("MLBR"), authorizing the Debtor to employ and retain McCarter & English, LLP ("M&E" or the "Firm") as its bankruptcy counsel; and upon the affidavit of Charles A. Dale, III, a partner of the Firm, in support thereof (the "Dale Affidavit"); and the Court being satisfied, based on the representations made in the Application and the Dale Affidavit, that M&E represents or holds no interest adverse to the Debtor or to its estate, and further that M&E is "disinterested" under section 101(14) of the Bankruptcy Code, and that the employment of M&E is necessary and in the best interests of the Debtor, its creditors and its estate; and due and proper notice of the Application having been provided; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Application is granted *nunc pro tunc* to July 25, 2007; and it is further

- 1 -

ME1 6606145v.1

ORDERED that M&E will seek approval of payment of compensation upon the filing of appropriate applications for allowance of interim or final compensation pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the MLBR and applicable Orders of this Court.

Dated: _____, 2007

                                                    Honorable Joan N. Feeney
                                                    United States Bankruptcy Judge

MEI 6606145v.1