UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>SHAMUS HOLDINGS, LLC,<br><br>Debtor. | Chapter 11<br>Case No. 07-14572 (JNF) |

## **MOTION OF LBM FINANCIAL, LLC TO DISMISS CHAPTER 11 PROCEEDING**

LBM Financial, LLC ("LBM"), the holder of a mortgage recorded against the real property standing in the name of the Shamus Holdings, LLC (the "Debtor"), moves this Court to dismiss this bankruptcy proceeding for cause pursuant to 11 U.S.C. § 1112(b). The cause warranting dismissal is the Debtor's bad faith in filing its voluntary petition, as exhibited by, among other things, the following facts:

a. The Debtor was organized only six days before it initiated this bankruptcy proceeding.

b. The Debtor is a single asset real estate entity which acquired its only asset on the day it was organized from a realty trust controlled by Steven A. Ross ("Ross"), a member of the Debtor holding a 75% ownership interest.

c. The Debtor lists only one unsecured creditor and that creditor is an affiliate or insider managed by Ross. Moreover, the claim allegedly held by that creditor appears to have arisen against the Debtor three weeks **before** the Debtor was organized.

d. The Debtor filed for bankruptcy protection as part of a scheme to frustrate the legitimate efforts of LBM to conduct a foreclosure sale of its mortgage.

 e. The Debtor filed its petition only hours before the foreclosure sale was scheduled to proceed and after the Suffolk Superior Court refused to enjoin that sale. The request to enjoin the sale was brought by the former holder of a mortgage on the Debtor's property and the allegations upon which the request was based were verified, under oath, by Ross who is (or was) counsel to that mortgagee.

 f. Unless is avoids LBM's claim in its entirety or reduces the amount of that claim by several million dollars, the Debtor has no ability to confirm a plan of reorganization.

In support of the relief sought in this motion, LBM makes the following statements:

### Background

1. On July 17, 2007, the Debtor did not exist.

2. Steven A. Ross ("Ross"), a member of the Debtor and its manager, first executed a Certificate of Organization for the Debtor on July 18, 2007 and filed it with the Secretary of the Commonwealth of Massachusetts the next day. *See* Exhibit A which is a true and accurate copy of the Certificate of Organization. Ross holds a 75% ownership interest in the Debtor.

3. On July 19, 2007, Ross, as Trustee of the 14 Beach Street Realty Trust ("Beach Street"), executed a Unit Deed transferring the real property located at Unit C-1, Foundry Condominium, 314 West Second Street, South Boston, Massachusetts (the "Property") to the Debtor for "consideration paid of One Dollar ($1.00)." *See* Exhibit B which is a true and accurate copy of the Unit Deed.

4. Beach Street had owned the Property since September 12, 2005 when it acquired it via a Foreclosure Deed executed by Charles J. Housman, Trustee of the Pine Banks Nominee Trust ("Pine Banks"). *See* Exhibit C which is a true and accurate copy of the Foreclosure Deed

and Affidavit. Ross had been the successful bidder at the Pine Banks foreclosure sale with his bid of $760,000.00. *See id.* Subsequently, Ross appears to have assigned that bid to Beach Street. *See id.*

5. First Beach Street, and then the Debtor, acquired the Property subject to a mortgage held by LBM (the "LBM Mortgage"), which was recorded several months before the Pine Banks mortgage. *See* Exhibit D which is a true and accurate copy of the LBM Mortgage. The LBM Mortgage was granted by Foundry Realty, LLC ("Foundry") to secure the amounts due under a May 9, 2003 loan arrangement between LBM and 655 Corporation ("655").[1] This loan arrangement was evidenced by, among other things, a promissory note in the original principal amount of $1,200,000.00 (the "Note"). *See* Exhibit E which is a true and accurate copy of the Note. In addition to the LBM Mortgage, Foundry executed a Guaranty in which it guarantied the full and prompt payment to LBM of all amounts due under the Note. *See* Exhibit F which is a true and accurate copy of the Guaranty.

6. The Note matured on September 9, 2003, but the full amount due under the Note remains unpaid. Foundry failed to honor its obligations under the Guaranty and, as a result, LBM pursued foreclosure of the LBM Mortgage by scheduling a public auction sale of the Property for July 25, 2007.

7. On July 23, 2007, Pine Banks initiated a lawsuit against LBM in the Business Litigation Session of the Suffolk Superior Court (Civil Action No. 07-03193) by filing a Verified Complaint signed under oath by Ross. *See* Exhibit G which is a true and accurate copy of the Verified Complaint, without accompanying exhibits. In the Verified Complaint, Ross explained

---

[1] As this Court is likely aware, 655 is the debtor in a Chapter 11 proceeding pending in this district, docket number 06-13020-JNF, and it is not clear that LBM will ultimately receive any distribution or other payment in satisfaction of the amounts due under the Note as a result of the 655 bankruptcy proceeding.

3

that he acted as counsel to Pine Banks in connection with its dealings with Foundry and LBM. *See id.*, ¶¶ 11, 12.

8. The principal claim advanced by Pine Banks in the lawsuit was that LBM had agreed to subordinate the LBM Mortgage to a new mortgage to Pine Banks intended to secure a loan in the amount of $760,000.00. *See* Exhibit G, ¶ 11. Pine Banks alleges (through the attestations of Ross) that it relied on that unwritten agreement when it recorded its mortgage. *See id.*, ¶ 12. Pine Banks further claims that, despite receiving $760,000.00 from Ross (as high bidder at the foreclosure sale), its reliance on the unwritten agreement may result in harm or damages at some point in the future if Ross (as trustee of Beach Street) ever makes a claim against it. *See id.*, ¶ 21.

9. LBM flatly denied the allegation that it had agreed to subordinate the LBM Mortgage to Pine Banks and, in a preliminary ruling on the claims of Pine Banks, the Suffolk Superior Court (van Gestel, J.) held that, among other things, "there is significant doubt regarding [Pine Banks'] ability to succeed on each of the several counts in its complaint for a variety of reasons." *See* Exhibit H which is a true and accurate copy of the Suffolk Superior Court's decision.

10. On July 25, 2007, shortly after he received the decision from the Suffolk Superior Court, Ross signed the Debtor's voluntary petition and this bankruptcy proceeding was commenced.

11. As of July 25, 2007, the total amount of principal, interest, and certain other charges due under the Note was no less than $4,126,310.57. This figure does not include attorneys' fees and other expenses which LBM is entitled to recovery under the terms of the Note.

12. The Debtor's petition indicates that it is a single asset real estate entity whose only asset is the Property, the funds generated by the Property, and certain claims related to the Property. Upon information and belief, the market value of the Property is far less - possibly millions of dollars less - than the total amount remaining due under the Note.

13. According to the Schedules, the Debtor has only one unsecured creditor, GMCR Capital, LLC ("GMCR"). Based on the most recent Certificate of Organization on file with the Secretary of State for the Commonwealth of Massachusetts, GMCR is a Massachusetts limited liability company managed by Ross. *See* Exhibit I which is a true and accurate copy of the Certificate of Organization for GMCR. Upon information and belief, GMCR is an affiliate of the Debtor under 11 U.S.C. § 101(2) and possibly an insider of the Debtor as well under 11 U.S.C. § 101(31).

14. The Schedules indicate that GMCR's claim against the Debtor arose three weeks <u>before</u> the Debtor existed.

15. While the Statement of Financial Affairs suggests that the Debtor receives monthly income in the amount of $5,500.00, any funds generated by the rents and leases of the Property are subject to the security interest granted to LBM by the LBM Mortgage. See Exhibit D, at 2-3. To the extent that any such proceeds exist, they represent LBM's cash collateral and LBM does **not** consent to the use of its cash collateral by the Debtor or any other party.

16. The Debtor has not yet requested permission to use LBM's cash collateral. Instead, its first affirmative action in this bankruptcy proceeding was to seek authority to conduct an examination of LBM's managing member, Marcello Mallegni.

## Argument

17. Upon finding that cause exists, a bankruptcy court shall dismiss a Chapter 11 proceeding or convert it to a Chapter 7 proceeding, whichever is in the best interests of the debtor's creditors. *See* 11 U.S.C. § 1112(b)(1).

18. Several courts within the First Circuit have held that sufficient cause exists to dismiss a bankruptcy proceeding when a debtor's pre-petition and post-petition actions evidence bad faith, or a lack of good faith, in filing its bankruptcy petition. *See, e.g., In re Harvey Road Assoc.*, VIII, 140 B.R. 302, 305 (Bankr. D. Mass. 1992); *In re Assembled Interests Corp.*, 117 B.R. 31, 34 (Bankr. D. N.H. 1990); *In re Bryan*, 104 B.R. 554, 557 (Bankr. D. Mass. 1989); *In re G-2 Realty Trust*, 6 B.R. 549, 553-54 (Bankr. D. Mass. 1980).

19. These courts have considered the following factors, among others, in determining whether cause exists to dismiss a bankruptcy proceeding for lack of good faith, or bad faith:

   a. "The debtor has few or no unsecured creditors";

   b. "The petition was filed on the eve of foreclosure";

   c. "The foreclosed property is the sole or major asset of the debtor";

   d. "There was no pressure from non-moving creditors";

   e. "Reorganization essentially involves the resolution of a two party dispute"; and

   f. "A corporate debtor was formed and received title to its major assets immediately before the petition."

*In re Bryan*, 104 B.R. at 558; *see In re Harvey Road Assoc. VIII*, 140 B.R. at 305.

20. Cause to dismiss a debtor's Chapter 11 proceeding has also been found when the debtor was created for the sole purpose of commencing a bankruptcy that its predecessor in

6

interest would not have been eligible to commence, unless the debtor "demonstrates 'exemplary motives and scrupulous good faith'." *See In re G-2 Realty Trust*, 6 B.R. at 553-54; *see also In re Assembled Interests Corp.*, 117 B.R. at 34 (recognizing attempt to create shell corporation two days before filing and one day before foreclosure would, in and of itself, be strong evidence of bad faith and, thus, cause for dismissal).

21.     The legislative history of the Bankruptcy Code also gives support to the "good faith" requirement and indicates that the court is given "wide discretion" to use its equitable authority to dismiss a proceeding under Chapter 11 where such a result is appropriate. *See House Report*, Rep. No. 95-595, 95th Cong., 1st Sess. (1977) 405; *Senate Report* No. 95-989, 95th Cong., 2d Sess. (1978) 117. The equitable nature of such a determination supports the construction that a debtor's lack of "good faith" may constitute cause for dismissal of a petition. *See Bryan*, 104 B.R. at 557; *In re Weber*, 209 B.R. 793, 800 (Bankr. D. Mass. 1997) (opining that debtor seeking equitable treatment in bankruptcy court must have acted equitably in order to obtain that treatment); *see also* 7 *Collier on Bankruptcy* (15th ed.) ¶ 1112.07[2] (noting that courts have authority to terminate bankruptcy proceedings in order to prevent abuse of bankruptcy laws).

22.     The inherent power of the Bankruptcy Court to examine the good faith of a putative debtor and to limit that debtor's ability to avail itself of the bankruptcy protections has recently been affirmed by the United States Supreme Court in the context of a Chapter 7 debtor seeking to convert his bankruptcy proceeding to one under Chapter 13. *See Marrama v. Citizens Bank of Mass.*, 127 S.Ct. 1105, 1111-12 (2007). Since the *Marrama* decision was issued, at least two courts have applied its holdings in connection with evaluating whether a debtor's actions amount to bad faith sufficient to warrant a disqualification for the relief afforded by Chapter 11.

*See In re Euro-American Lodging Corp.*, 365 B.R. 421, 2007 Bankr. LEXIS 1010, *7-12 (Bankr. S.D.N.Y., April 3, 2007) (despite allowing debtor's motion to convert Chapter 7 proceeding to a Chapter 11 proceeding, Court evaluated allegations of bad faith on part of debtor and noted that, "Although Marrama involved a dishonest chapter 7 debtor's eligibility for chapter 13 relief, it has broader implications"); *In re George Love Farming, LC*, 366 B.R. 270, 2007 Bankr. LEXIS 1095 *18-24 (Bankr. D. Utah, March 23, 2007) (relying upon *Marrama* in denying debtor's motion to convert Chapter 7 proceeding to Chapter 11 proceeding) [A true and accurate copy of these decisions is annexed hereto as Exhibit J].

23.     These decisions are consistent with the earlier decisions of courts within the First Circuit finding sound bases for dismissal of Chapter 11 proceedings when circumstances suggest that the debtor has engaged in bad faith conduct or, without the good faith necessary to avail itself of the protections of the bankruptcy process. *See, e.g., G-2 Realty Trust*, 6 B.R. at 552 ("Good faith, in the sense perceived by this court to have continued relevance, is merged into the power of the court to protect its jurisdictional integrity from schemes of improper petitioners seeking to circumvent jurisdictional restrictions and for petitioners with demonstrable frivolous purposes absent any economic reality").

24.     The Debtor has filed this bankruptcy proceeding in bad faith, or with a lack of good faith, as evidenced by the following facts:

    a. The Debtor's sole asset is the Property which it acquired from an insider, for stated consideration of one dollar, only six days before filing bankruptcy. *See In re Yukon Enterprises, Inc.*, 39 B.R. 919, 921 (Bankr. C.D. Cal. 1984) (creating rebuttable presumption of bad faith filing once

8

creditor establishes transfer of distressed property to debtor was in close proximity to filing of case);

b. The affiliate or insider from which the Debtor acquired the Property was Beach Street, a nominee trust,[2] which was not eligible to become a Chapter 11 debtor. *See, e.g., Nancy Cantor, Trustee of Cantor Manson Trust v. Wilbraham & Monson Academy*, 609 F.2d 32 (1st Cir. 1979) ) (discussing ineligibility of nominee trust to file bankruptcy); *see also In re G-2 Realty Trust*, 6 B.R. at 554 (noting that change in form of entity from ineligible nominee trust to business trust immediately prior to bankruptcy filing, but well after foreclosure sale of its property had been scheduled, was not for any legitimate business purpose other than to obtain benefit of automatic stay);

c. The Debtor did not exist until after LBM had scheduled a foreclosure sale of the LBM Mortgage;

d. The Debtor acquired the Property because of the pending foreclosure sale and filed bankruptcy because Pine Banks was unsuccessful in obtaining a injunction;

---

[2] *See* Exhibit K which is a true and accurate copy of the Declaration of Trust governing Beach Street. "The following features are present in a nominee trust: (1) the names of the beneficiaries are filed with the trustees rather than being publicly disclosed; (2) a trustee may serve simultaneously as a beneficiary; (3) the trustees lack power to deal with the trust property except as directed by the beneficiaries; (4) a third party may rely on the disposition of trust property pursuant to any instrument signed by the trustee, without having to inquire as to whether the terms of the trust have been complied with; and (5) the beneficiaries may terminate the trust at any time, thereby receiving legal title to the trust property as tenants in common in proportion to their beneficial interest ... The third listed feature is the key to the nominee nature of the trust." *In re Rosencranz*, 193 B.R. 629 (Bankr. D. Mass. 1996) (Hillman, J.)

  e. The Debtor filed its bankruptcy proceeding only hours before the foreclosure sale to negate the foreclosure sale and not for any reason having to do with other creditors; and

  f. As evidenced by the Debtor's request to examine LBM's principal, the Debtor's bankruptcy proceeding will likely be dedicated exclusively to the resolution of its dispute with LBM.

25. Upon information and belief, the Debtor was created for the sole purpose of frustrating LBM's legitimate foreclosure efforts and with no intention or ability to pursue a plan of reorganization. Moreover, it took these steps after Pine Banks (which appears to be controlled or influenced by Ross) unsuccessfully sought to enjoin LBM's foreclosure sale.

26. Upon information and belief, the Debtor owns no assets which are unencumbered by the LBM Mortgage. Consequently, unless the Debtor succeeds in avoiding LBM's claim in its entirety or reducing the amount of that claim by several million dollars, the Debtor would appear to have no ability to present a confirmable plan of reorganization.

27. To the extent that the Debtor contests any of the facts and allegations presented above, LBM requests an evidentiary hearing.

## Conclusion

20. As demonstrated herein, the Debtor did not file its voluntary petition in good faith and this case should be dismissed.

WHEREFORE, LBM prays that this Court enter an Order (a) dismissing the Debtor's case, and (b) granting such other and further relief as may be just and proper.

                                        Respectfully submitted,

                                        LBM FINANCIAL, LLC,


*/s/ Jeffrey D. Ganz*

Dated: August 17, 2007                  Jeffrey D. Ganz (BBO #564375)
                                        Kristin M. McDonough (BBO #637899)
                                        Riemer & Braunstein LLP
                                        Three Center Plaza
                                        Boston, Massachusetts 02108
                                        (617) 523-9000